IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEANGELO BROTHERS, INC., : | |
| : | Case No. 4:05-cv-0800 |
| Plaintiff, : | |
| : | (Judge Jones) |
| v. : | |
| : | |
| OTIS EUGENE LONG, : | |
| Defendant. : | |

**MEMORANDUM AND ORDER**

**June 1, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Plaintiff DeAngelo Brothers Incorporated's ("DBI" or "Plaintiff") Emergency Motion to Remand, filed on April 21, 2005 (Rec. Doc. 2). This immediately followed Otis Eugene Long's ("Long" or "Defendant") removal of the action from the Court of Common Pleas of Luzerne County to this Court on April 20, 2005. Oral argument was held on May 20, 2005 and the Motion is now ripe for our review.

For the following reasons, Plaintiff's Motion will be granted to the extent that we find that removal was improper. The Motion will be denied to the extent that we decline to award DBI any sum with respect to its claim for attorneys' fees. This action will be remanded to the Luzerne County Court of Common Pleas.

**PROCEDURAL HISTORY & STATEMENT OF FACTS**

As noted, Plaintiff initiated this action in the Luzerne County Court of Common Pleas on February 15, 2005. Its complaint alleged violations of state law in three separate counts: (1) breach of contract, (2) misappropriation of confidential business information; and, (3) tortious interference with perspective [sic] economic advantage. (Rec. Doc. 2, Ex 1).[1] In **each** of the three counts within the complaint, Plaintiff states that it seeks the following relief:

> a. damages in an amount in excess of $50,000.00 ....
> ...
> c. all attorneys fees and costs expended in enforcement
> d. such other relief as this Court deems just and equitable.

Id. at 12, 14, 16.[2] Immediately upon the filing of the complaint, President Judge Michael T. Conahan of the Luzerne County Court of Common Pleas issued a temporary order enjoining Long from engaging in conduct that violated a certain Non-Disclosure and Non-Competition Agreement (the "Agreement") that Long had, at some point in his employment with DBI, signed. (See id.).

The order by Judge Conahan was followed by a preliminary injunction hearing held before another member of his court, Judge Peter Paul Olszewski, Jr.

---

[1] We agree with Defendant that Plaintiff likely meant "prospective" and not "perspective" as that word appears in Count III of the complaint.

[2] Counts II and III also include a request for punitive damages and all three counts include a request for preliminary and permanent injunctive relief. Id.

on February 22, 2005.  Following that proceeding, Judge Olszewski entered a preliminary injunction which extended the same relief afforded by Judge Conahan's temporary order.  Over a month later, on March 31, 2005, Long filed preliminary objections to the complaint under the applicable Pennsylvania Rule of Civil Procedure.  On April 7, 2005, before the preliminary objections were resolved, DBI filed a motion seeking to have Long held in contempt for allegedly disregarding Judge Olszewski's order.   As a result, a hearing was scheduled before Judge Olszewski on April 25, 2005.  Five days before that scheduled contempt hearing, and sixty-four days after DBI served its complaint on Long, Long removed the action to this Court.  It is this removal that DBI challenges via the instant Motion. (See Rec. Docs. 1 and 2).

**DISCUSSION:**

Removal to federal court of an action brought in state court is governed by 28 U.S.C. § 1446.  The removal statute is strictly construed against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)(holding that Congress intended for courts to strictly construe the removal statute against removal)**.**  In relevant part, the statute states:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or

> proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). Here, Defendant does not dispute that he moved for removal beyond the thirty day window initially contemplated by the statute. Therefore, Defendant's removal must proceed under the one-year exception, which as noted allows removal within thirty days of an event that allows a party to "ascertain that the case is one which is or has become removable." Id. Defendant contends that the complaint as filed was not removable, but that DBI's subsequent petition for contempt was an event that allowed the Defendant to ascertain that the case was removable. Neither party controverts that the removal occurred within thirty days of the filing of DBI's petition for contempt.

In opposition to removal, DBI makes two alternative arguments. First, DBI contends that removal was invalid since the complaint as filed sought greater than

$75,000 in damages and thus was removable <u>ab</u> <u>initio</u>.³ In the alternative, DBI argues that even if its complaint was not removable at its inception, nothing stated within its petition for contempt should have altered the litigation in such a way that it converted the case to one which was then removable to federal court. We will address each of these issues in turn.

    A.    **Removal and DBI's Complaint as Filed**

As noted, DBI first contends that removal was not proper because it occurred greater than thirty days after the filing of a complaint that was removable <u>ab</u> <u>initio</u> under § 1332. Specifically, DBI alleges that the damages ($50,000) alleged in <u>each</u> of the three counts should be totaled so that they aggregate to at least $150,000 (plus attorneys' fees and punitive damages). The resulting claims would thus far exceed the $75,000 needed to invoke our jurisdiction.

The Third Circuit instructs that in determining the amount in controversy we are to aggregate the claims brought by a party in its complaint. <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 588 (3d Cir. 2003)("The general rules is that claims brought by a single plaintiff against a single defendant can be aggregated when calculating the amount in controversy, regardless of whether the claims are related to each

---

³ Clearly, the diversity aspect necessary to invoke our jurisdiction under § 1332 has been satisfied, and the instant dispute involves the monetary threshold only.

other."). As Defendant rightly notes, however, we can only aggregate claims for which a plaintiff could in theory simultaneously recover. As <u>Suber</u> explains, claims are <u>not</u> to be aggregated if a plaintiff:

> could not recover damages for both. That is, if these claims are alternative bases for recovery for the same harm under state law, [the plaintiff] could not be awarded damages for both, and a court should not aggregate the claims to arrive at the amount in controversy.

<u>Id.</u>

In an effort to argue that we should not aggregate DBI's claims, Long raises the "gist of the action" doctrine. Long contends that under Pennsylvania law this doctrine would prevent the Plaintiff from a simultaneous recovery under its tort counts (II and III) because this action's "gist" lies in contract. The "gist of the action" doctrine has been explained as follows:

> When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious.

<u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 906 A.2d 936, 944 (Pa. Commw. Ct. 2002)(quoting <u>Sunquest Info. Sys. Inc. v. Dean Witter Reynolds, Inc.</u>, 40 F.Supp.2d 644, 651 (W.D.Pa. 1999)).

The purpose of the "gist of the action" doctrine is to maintain the conceptual distinction between a breach of contract claim and a tort claim. "Tort actions lie

for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Etoll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002).

Long thus argues that we should consider only Count I, which sounds in breach of contract, in evaluating the amount in controversy because Counts II and III are tort claims and accordingly subsumed within the "gist" of Count I. Long cites us to Valhal Corp. v. Sullivan Assocs. Inc., which he claims stands for the proposition that we must make a "gist of the action" analysis at this juncture. 44 F.3d 195 (3d Cir. 1995). In Valhal Corp., a post-trial motion was brought by the defendant challenging original diversity jurisdiction in federal court. The court overturned a jury verdict on the basis that the "gist of the action" doctrine prevented the plaintiff from succeeding at trial on both tort and contract claims. We believe that Long's reference to Valhal Corp. is inapt. To be sure, there is a dearth of guiding federal authority relating to the "gist of the action" as it relates to evaluating whether we have jurisdiction. However, we have found that state courts have frequently been reluctant to dismiss tort counts in complaints which appear to involve, in the main, contract disputes. For example, in a recent opinion from the Court of Common Pleas of Philadelphia, a "gist of the action" argument similar to

Long's was made at the outset in the defendant's preliminary objections. See Gemini Bakery Equip. v. Baktek, 2005 WL 957635 at *3 (Phila. Comm. Pl. April 11, 2005). In that action, the plaintiff brought a complaint alleging breach of contract, misappropriation of trade secrets, tortious interference, and unfair competition. The court acknowledged that there was likely a contractual agreement between the parties, but explained that:

> it is premature to dismiss plaintiff's alternative tort claims [under the gist of the action doctrine.] At this point, it is not clear whether defendants admit to or deny the existence of an agreement between themselves and plaintiff. Thus the Court will not dismiss the tort claims at this point because it may eventually be found that there was no agreement between the parties.

Id., see also Greencourt Condominium Assoc. v. Greencourt Partners, 2004 WL 3051336 (Phila. Comm. Pl. Dec. 22, 2004)(In overruling a defendant's preliminary objections, the court explained that it was reluctant to consider a "gist of the action" argument because the allegations did not affirmatively establish the existence of a contractual relationship).

Here we are faced with a situation similar to that in Gemini Bakery. At oral argument, Defendant's counsel explained that in his view it is far from certain whether this is a contract action at all, as Long contends that the Agreement has expired:

> Mr. Nowalis: Your Honor, just because the Court touched on the

> merits of the underlying cause of action on the alleged illegal competition, we are not to the point where the defendant has had to address the merits of the claim. In addition to the jurisdictional defect, **we have a defense on the merits of the claims inasmuch as the noncompete in our view terminated three years ago**. Mr. Long was hired in 1999, signed the noncompete, he terminated his relationship with the plaintiff the following spring, did not compete with them for two years; that would take us to 2003. He -- subsequent to the termination he was hired again by the plaintiff but was not required and did not sign another noncompete. **So our view of the merits of the case is the noncompete expired in 2003.**

(emphasis added). If Defendant himself contends that there is no contract, it is difficult for us to conceive why we should find that one exists in a hypothetical sense simply to defeat a remand of this action.

Because the "gist of the action" doctrine cannot be utilized to collapse the counts in the complaint at this early stage, we may properly aggregate the damages requested by the plaintiff in order to determine the amount in controversy. The resulting total, before any additional claims for attorneys' fees or punitive damages, is $150,000, which as noted is far in excess of the $75,000 required for diversity jurisdiction. Therefore, we hold that DBI's original complaint as initially filed in state court was removable on its face under § 1332.

Finally, it is worth noting that even if we were to accept Long's argument

that Counts II and III of DBI's complaint collapse into Count I because of the "gist of the action" doctrine, we would in that event still find it difficult to contemplate that Count I does not indicate damages in excess of $75,000 such that the action was removable on its face under § 1332.  It is not disputed that punitive damages and attorneys' fees, both of which are claimed in Count I, are to be included in calculating an amount in controversy for jurisdictional purposes.  See Suber, 104 F.3d 578 at 585("[I]n calculating the amount in controversy, we must consider potential attorneys' fees"); Angus v. Shiley, 989 F.2d 142, 145-46 (3d Cir. 1993)(holding that a "reasonable reading of the value of the rights being litigated" includes a consideration of punitive damages).  A plain reading of the complaint makes it difficult to see how it can be contended that these claims would not aggregate to greater than $25,000, which is all that was needed to reach the amount required to invoke our jurisdiction under § 1332.  Put another way, had Long properly removed the action within the initial period, and it the event DBI sought remand, we would have been hard pressed to grant such relief.

      **B.**    **The Motion for Contempt and its Relation to the Amount in Controversy**

Assuming arguendo, that we had found that it was not readily apparent from the four-corners of the complaint that the $75,000 amount in controversy

requirement for diversity jurisdiction had been met, we nonetheless would find that DBI's petition for contempt filed in County Court did not alter the action so that it suddenly placed Defendant on notice that an amount in excess of $75,000 was being claimed by Plaintiff. In its petition for contempt, DBI requests that the Luzerne County Court:

> impose appropriate sanctions upon Mr. Long including, but not limited to, an unconditional fine for his contemptuous conduct, a requirement that he pay all damages suffered by DBI as a result of his conduct, including all costs and attorneys fees incurred by DBI related to this Petition and such other relief as this Court deems just, equitable and appropriate to further deter such unlawful and contemptuous conduct.

(Rec Doc. 1 Ex. 11 at 9-10). We fail to see how Long could have read this passage to indicate such a sudden and dramatic increase in the damages requested by DBI. This is a particularly problematic argument for Long in light of his previous argument that we read the complaint as one which alleges less than $75,000 in damages in any event.

As we stated to Defendant's counsel during argument, we believe that it is generally fair for an attorney to use most procedural tools within the legal toolbox in the course of competent and zealous representation of a client, and certainly we cast no aspersions upon counsel for doing so here. However, we have been "around the block," so to speak, and as a result can only find that the removal of

this case to our docket, on the very eve of Long's scheduled appearance in Judge Olszewski's courtroom for a contempt hearing, is highly suspect. In the face of DBI's Motion, Long seeks to have us engage in what we believe is not only a tortured and premature reading of the complaint, but also to accept what we view as a contrived argument relating to the import of the contempt action. We decline to do either, and will accordingly remand this action to Judge Olszewski's capable hands.

### C.    Attorneys' Fees

Finally, DBI requests that this Court award it the fees and costs incurred in contesting Long's removal. In <u>Roxbury Condominium Ass'n Inc. v. Anthony S. Cupo Agency</u>, the Third Circuit explained that an award of attorneys' fees is not warranted when removal was made "under [] less than bright-line circumstances." 316 F.3d 224, 228 (3d Cir. 2003). Although Long has attempted to interpose a novel argument involving the "gist of the action" doctrine, we cannot say that the attempted removal was made against "bright-line" precedent. Therefore, we believe it appropriate to deny DBI's Motion to the extent that it seeks attorneys' fees, as they are not warranted under all of the circumstances of this case.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Plaintiff's Emergency Motion for Remand (Rec. Doc. 2) is GRANTED to the extent that this action shall be remanded to Luzerne County Court.  The Motion is DENIED to the extent that no award of attorneys' fees is warranted.

2. The Clerk is directed to transfer this action to the Luzerne County Court of Common Pleas.

3. The Clerk is further directed to close the file on this case.

                                    <u>s/ John E. Jones III</u>
                                    John E. Jones III
                                    United States District Judge